UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 08-4614(DSD/JSM)

Judith Partington,

       Plaintiff,

v.                                    **ORDER**

Intek Plastics, Inc.,

       Defendant.

      John C. Syverson, Esq. and Stempel & Doty, PLC, 41 12th Avenue North, Hopkins, MN 55343, counsel for plaintiff.

      Joel E. Abrahamson, Esq., Rebecca L. Neubauer, Esq. and Leonard, Street & Deinard, 150 South Fifth Street, Suite 2300, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court upon defendant Intek Plastics, Inc.'s ("Intek") motion for summary judgment. Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants Intek's motion.

**BACKGROUND**

This employment dispute arises out of Intek's August 7, 2008, termination of plaintiff Judith Partington ("Partington"). Intek is a thermoplastic extrusion manufacturer in Hastings, Minnesota. Intek hired Partington, a Minnesota resident, in February 1989. (Partington Dep. 103.) Approximately five years before she began

working at Intek, Partington injured her right leg and ankle in a car accident. (Id. at 60-61.) As a result, Partington's right leg is shorter than her left leg. (Id. at 61.)

**I.  The Bendi Lift**

Partington became a shipping clerk at Intek in August 2008. The shipping clerks are organized by Local 949 of the International Brotherhood of Electrical Workers pursuant to a collective bargaining agreement ("CBA"). (See id. at 19; Palmer Aff. ¶ 5; Kimmes Aff. Ex. A.) Intek's shipping clerks use various types of forklifts to move inventory. (Palmer Dep. 19-20.) In 2005, Intek transferred inventory from an outside warehouse to its North Plant. (Kimmes Aff. ¶ 3.) To accommodate the inventory at the North Plant, Intek installed a special racking system with narrow aisles and acquired two special forklifts, a Bendi lift and an order picker, to maneuver through the aisles. (Id.) Intek then trained the shipping clerks to use the Bendi lift and order picker. (Partington Dep. 78-79.) Thereafter, Partington claims that Intek assigned her to operate the Bendi lift at the North Plant more often than any other shipping clerk.[1] (Id. at 12-13.)

Using the Bendi lift caused Partington to experience pain in her right leg and ankle because she had to overextend her right leg to reach the gas pedal. (See id. at 64-65.) Partington maintains

---

[1] According to Intek, the shipping clerks rotated between the North and South Plants. (Kimmes Aff. ¶¶ 4-5; Odman Dep. 24-25.)

that she informed Intek of her discomfort, but that Intek did not respond. Partington contacted her doctor about the pain, who recommended that she work only eight hours a day. (Id. at 82-83.) Intek granted this accommodation on September 7, 2005. (Id. at 91.) Partington's physical suffering did not subside, however, and on January 3, 2006, she saw a doctor at the Mayo Clinic, who suggested that she operate the Bendi lift twenty-percent of her time at work, or as tolerated. (Id. at 63-66, 69-70.) Intek allegedly denied this accommodation, and told Partington not to return until she could work without restrictions. (Id. at 65-66.)

At the beginning of March 2006, Partington filed a charge of disability discrimination against Intek with the Minnesota Department of Human Rights ("MDHR").[2] According to Partington, the MDHR investigated the charge and found probable cause to credit her discrimination claim.[3] (Pl.'s Mem. Opp'n 6.) Partington, however, voluntarily returned to work on March 24, 2006, after allegedly discovering that she could move the Bendi lift seat forward to reach the gas pedal more easily. (Id. at 5; Partington Dep. 124-25.) Around this time, Partington also created a pedal extension

---

[2] Partington cites copies of a March 14, 2006, discrimination charge and an April 5, 2007, MDHR letter and memorandum. (See Syverson Decl. ¶¶ 6-7.) These documents, however, are not before the court. Rather, the exhibits cited by Partington include a medical document and a deposition. (See id. Exs. 6 & 7 [Doc. Nos. 37-6, 37-7].)

[3] Intek alleges that this dispute was later resolved through labor arbitration in its favor. (See Abrahamson Aff. Ex. K.)

that enabled her to operate the Bendi lift more comfortably. (Partington Dep. 234.) Intek granted Partington's request to use the extension on April 12, 2006. (Id. at 234-35.)

## II. Misconduct

In October 2007, Intek disciplined Partington for striking another employee while reversing a forklift and failing to report the incident.[4] (Id. at 211-12.) Partington claims that she had no knowledge that an accident occurred. (Id.) Partington was involved in another forklift incident on July 26, 2008. According to Partington, while she was driving the forklift, the material on the forks slid off.[5] (Id. at 148-50.) Partington maintains that her conduct was unintentional and that no injuries resulted. Intek

---

[4] Intek notes that Partington was also disciplined for verbal abuse in December 2007, and misuse of Intek's email system in April 2008. (See Def.'s Mem. Supp. 5-7; Partington Dep. Ex. 4 at 15-22.) Partington does not dispute these incidents.

[5] The parties dispute the events that took place that day. According to Intek, on July 28, 2008, an employee reported that Partington had dangerously driven a forklift over the weekend. (Palmer Aff. Ex. A at 445.) Intek immediately interviewed the employees who had worked the weekend shift, including Partington. According to Partington's co-workers, she was "pissed off" and went "beserk" on the forklift, driving it very "aggressively." (Id. at 449, 455.) Specifically, Partington drove a forklift full of crates at a fast speed toward Val Chandler ("Chandler"), another Intek employee. (Id. at 437, 445.) When Partington was close to Chandler, she abruptly applied the brakes, causing the crates to slide off the forks towards Chandler. (Id.)
   In an August 7, 2008, letter, Intek terminated Partington, citing unsafe forklift operation in October 2007 and July 2008, and lack of candor during its investigation of the 2008 incident. (Id. at 438.)

4

disciplined and eventually terminated Partington due to these incidents.

On July 2, 2008, Partington filed a six-count complaint in state court alleging discrimination and retaliation under the Americans with Disabilities Act ("ADA") and the Minnesota Human Rights Act ("MHRA"), aiding and abetting a violation of Minnesota Statutes § 363.08, subdivision 2, and intentional infliction of emotional distress ("IIED"). Intek timely removed. The court now considers Intek's June 8, 2009, motion for summary judgment.

**DISCUSSION**

I. **Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of her claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

**A. Disability Claims**

The court applies McDonnell Douglas's burden-shifting analysis to discrimination and retaliation claims under the ADA and MHRA in cases where there is no direct evidence of discriminatory or retaliatory intent. See Wilking v. County of Ramsey, 153 F.3d 869, 872 (8th Cir. 1998) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973)). Under McDonnell Douglas, the plaintiff must first establish a prima facie case. See Wilking, 153 F.3d at 872 (citation and quotation omitted). The burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. Id. at 872-73. If the defendant satisfies its burden, the plaintiff must show that the defendant's reason is pretext for unlawful discrimination. Id. at 873. A plaintiff may show pretext

"either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981). In the instant matter, the court determines that Partington cannot establish a prima facie case of disability discrimination or retaliation.

    **i.**    **Discrimination**

To establish a prima facie case of disability discrimination under the ADA and the MHRA, Partington must establish that: (1) she was disabled; (2) she was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) she suffered an adverse employment action due to her disability. See Burchett v. Target Corp., 340 F.3d 510, 516 (8th Cir. 2003). Partington maintains that she is disabled due to her leg and ankle injuries and that Intek discriminated against her by refusing to exempt her from operating the Bendi lift. In response, Intek contends that operation of the Bendi lift was an essential function of the shipping clerk position that Partington could not perform.

"An individual is qualified if [s]he satisfies the requisite skill, experience, education, and other job-related requirements and 'can perform the essential job functions, with or without reasonable accommodation.'" Rehrs v. Iams Co., 486 F.3d 353, 356

7

(8th Cir. 2007) (quoting Cravens v. Blue Cross & Blue Shield of Kansas City, 214 F.3d 1011, 1016 (8th Cir. 2000)). An employer bears the burden of showing that a particular function is essential. See Benson v. Nw. Airlines, Inc., 62 F.3d 1108, 1113 (8th Cir. 1995). The court considers the following factors when evaluating whether a task qualifies as an essential function:

> (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the [employee] to perform the function; (5) the terms of a [CBA]; (6) the work experience of past [employees] in the job; and (7) the current work experience of [employees] in similar jobs.

Rehrs, 486 F.3d at 356 (citing 29 C.F.R. § 1630.2(n)(3)).

In support of its position, Intek notes that from 2005 to 2006, it employed seven shipping clerks, including Partington. (Kimmes Aff. ¶ 4.) Intek argues that due to its small staff, each shipping clerk was required to operate the Bendi lift four to six hours per day to handle the workload at the North and South Plants, cover vacations, absences and weekend shifts, and guarantee the equitable distribution of overtime, as required by the CBA. (Id. ¶ 5; Bates Dep. 130-31; Odman Dep. 21-23, 27-28.) These factors strongly weigh in favor of finding that operating the Bendi lift was a nondiscriminatory, essential job function of the shipping clerk position.

8

In response, Partington argues that use of the Bendi lift was not essential because Intek could have assigned her to work solely at the South Plant, which only had standard and stand-up forklifts. Partington, however, acknowledged that "there was a great deal of overtime work" at the North Plant and that Intek "needed more help" there. (Partington Dep. 84, 111.) Permitting Partington to work exclusively at the South Plant would have created extra work at the North Plant and deprived the other shipping clerks of the chance to work at the South Plant. "Under the ADA, an accommodation that would cause other employees to work harder, longer, or to be deprived of opportunities is not mandated." Rehrs, 486 F.3d at 357 (citations omitted). Moreover, such an accommodation would have violated Intek's duty under Article 15, section 7 of the CBA to equitably distribute overtime work among the shipping clerks. (Kimmes Aff. Ex. A at 151.) An employer need not violate a CBA to accommodate a disabled employee. See Boersig v. Union Elec. Co., 219 F.3d 816, 821-22 (8th Cir. 2000); Benson, 62 F.3d at 1114.

Alternatively, Partington argues that Intek should have let her use other forklifts besides the Bendi lift at the North Plant. Only the Bendi lift and order picker, however, could maneuver through the North Plant's narrow aisles. Consequently, Intek argues, all shipping clerks were required to operate the Bendi lift to handle the North Plant's workload. (Kimmes Aff. ¶ 4.) This generally applicable job requirement was not discriminatory. See

9

Rehrs, 486 F.3d at 358 (requiring all employees to rotate shifts not discriminatory). Moreover, Intek was not required to reallocate Partington's Bendi lift duties to another employee or exempt her from this task altogether. See Fjellestad v. Pizza Hut of Am., Inc., 188 F.3d 944, 950 (8th Cir. 1999) ("[A]n employer need not reallocate or eliminate the essential functions of a job to accommodate a disabled employee.") (citation omitted).

Lastly, Partington claims that use of the Bendi lift is not essential because Intek exempted other employees from operation of certain forklifts. As an example, Partington argues that Intek allowed a tall employee to forgo operating a small forklift. (Pl.'s Mem. Opp'n 21.) The record, however, indicates that the employee referenced by Partington did not hold a position that required use of forklifts. (Palmer Dep. 80-82.) Further, in the event this employee assumes a position that necessitates forklift use, Intek intends to acquire a forklift large enough for him to operate. (Id.) The record does not indicate that Intek has exempted this employee, or any other employee, from forklift use. Therefore, Partington's argument does not undermine Intek's position that operation of the Bendi lift is an essential function of the shipping clerk position.

For the above-stated reasons, the court determines that operation of the Bendi lift is an essential function of the shipping clerk position. Furthermore, Intek's refusal to exempt

Partington from this essential job function was not discriminatory under the ADA or MHRA. Accordingly, Partington has failed to establish a prima facie case of disability discrimination, and summary judgment is warranted on these claims.

### ii. Retaliation

Partington next claims that Intek unlawfully retaliated against her. To support a prima facie case of reprisal under the ADA and MHRA, Partington must show that she "engaged in a protected activity, suffered an adverse employment action, and that there is a causal connection between the two." Heisler v. Metro. Council, 339 F.3d 622, 632 & n.6 (8th Cir. 2003). An adverse employment action "is one that would have 'dissuaded a reasonable worker from making or supporting a claim of discrimination.'" See Hervey v. County of Koochiching, 527 F.3d 711, 722 (8th Cir. 2008) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)). Partington contends that Intek subjected her to multiple adverse employment actions after she complained about the Bendi lift and filed the MDHR claim, including: (1) asking her to take a different position at a lower pay or accept short-term disability benefits; (2) assigning her to operate the Bendi lift at the North Plant more than other shipping clerks; (3) forcing her to undergo remedial training; (4) subjecting her to unwarranted disciplinary action; and (5) terminating her.

Partington's retaliation claim fails under each of these theories. First, Intek's request that Partington take a different position or apply for short-term disability benefits was not an adverse employment action. Rather, Intek made this request in an attempt to accommodate Partington's alleged disability. This action would not have dissuaded a reasonable employee from making a discrimination claim. Indeed, Partington filed a charge with the MDHR in March 2006. Second, the October 2007 and July 2008 disciplinary actions and Partington's termination occurred well over one year after Partington first complained about the Bendi lift and filed the MDHR claim. These events are simply too far removed from each other to establish causation. See Lewis v. St. Cloud State Univ., 467 F.3d 1133, 1138 (8th Cir. 2006) (eleven-month interval between protected activity and adverse employment action insufficient to establish causation); Kipp v. Mo. Highway & Transp. Comm'n, 280 F.3d 893, 897 (8th Cir. 2002) (two-month interval insufficient). Lastly, Partington has submitted no credible evidence establishing that Intek assigned her to operate the Bendi lift more often than other shipping clerks or forced her to undergo remedial training as a result of her complaints about the Bendi lift. Accordingly, the court determines that Partington cannot establish a prima facie case of retaliation under the ADA or MHRA, and summary judgment is warranted on these claims.

### iii. Aiding and Abetting a Violation of the MHRA

Partington also alleges that Intek violated the MHRA by aiding and abetting its employees to discriminate against her based on her disability.[6] To establish this claim, Partington must show that Intek "intentionally aided, abetted, incited, compelled or coerced a person to engage in any of the practices forbidden by [the MHRA]." Minn. Stat. § 363A.14(1). Partington, however, has presented no evidence to the court indicating that Intek intentionally incited third parties to discriminate against her. The record does not identify any of the third parties that allegedly discriminated against Partington, describe their discriminatory actions, or set forth how Intek incited those persons to violate the MHRA. In short, this claim has no merit, and summary judgment is required.

---

[6] The court exercises supplemental jurisdiction over Partington's MHRA and IIED claims. See 28 U.S.C. § 1367(a); McLain v. Andersen Corp., 567 F.3d 956, 965 (8th Cir. 2009) ("[P]ursuant to 28 U.S.C. § 1367, courts have the discretion to exercise supplemental jurisdiction over remaining state-law claims even after the district court has dismissed all claims over which it has original jurisdiction.") (quotation and citation omitted). Partington's federal and state claims concern Intek's allegedly discriminatory actions. Therefore, because the claims derive from the same facts, deciding both claims in one proceeding promotes judicial efficiency. See OnePoint Solutions, LLC v. Borchert, 486 F.3d 342, 350 (8th Cir. 2007) (exercise of supplemental jurisdiction appropriate when claims would ordinarily be expected to be tried in one proceeding).

**B. IIED**

Lastly, Partington asserts that she suffered severe emotional distress as a result of Intek's discriminatory conduct. To establish IIED, Partington must demonstrate four elements: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress and (4) the distress must be severe." See Langeslag v. KYMN Inc., 664 N.W.2d 860, 864 (Minn. 2003) (citation omitted). Conduct that is extreme and outrageous "must be so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 439 (Minn. 1983) (citation and quotation omitted). Even assuming that Partington could show that she suffered severe emotional distress, the court determines that she cannot establish the first two elements of an IIED claim. No evidence before the court indicates that Intek's actions were "extreme and outrageous." Accordingly, the court grants summary judgment on this claim.

## CONCLUSION

Accordingly, based on the above **IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Doc. No. 16] is granted. **LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: December 28, 2009

s/David S. Doty
David S. Doty, Judge
United States District Court